IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

MARCUS MAYS,                          )
                                      )
            Plaintiff,                )
                                      )
v.                                    )      Case No.:      2:12-CV-00006-JCH
                                      )
DOUG HOWELL, THOMAS McNELLY,          )
and CITY OF LaGRANGE, MISSOURI,       )
                                      )
            Defendants.               )

<u>**DEFENDANTS DOUG HOWELL, THOMAS McNELLY, AND THE
CITY OF LaGRANGE'S REPLY TO PLAINTIFF'S RESPONSE TO
DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT**</u>

Defendants LaGrange Police Officer Doug Howell, LaGrange Police Chief Thomas
McNelly, and the City of LaGrange (collectively referred to hereinafter as "Defendants"), by and
through counsel, for Defendants Doug Howell, Thomas McNelly, and the City of LaGrange's
Reply to Plaintiff's Response to Defendants' Joint Motion for Summary Judgment state as
follows:

## I.    INTRODUCTION

Defendants have demonstrated that there is no genuine issue of material fact and
Defendants are entitled to summary judgment as a matter of law. Defendant LaGrange Police
Officer Doug Howell ("Officer Howell") is entitled to summary judgment because the seizure of
Plaintiff Marcus Mays' ("Plaintiff") dog was reasonable in that the dog posed an imminent
danger to him and others. Furthermore, Plaintiff's claim against Officer Howell is barred by
qualified immunity because a reasonable police officer at the scene would not have realized that
the seizure of a dog that posed an imminent danger to him/her would have violated Plaintiff's
constitutional rights.

Chief McNelly is also entitled to summary judgment because there was no violation of Plaintiff's constitutional rights. Even assuming there was a violation of Plaintiff's constitutional rights, Chief McNelly did not directly participate in the seizure of Plaintiff's dog and, therefore, he is entitled to summary judgment. Additionally, Plaintiff's claim that Chief McNelly directly participated in the seizure is barred by qualified immunity.

In addition, Defendant LaGrange Police Chief Thomas McNelly ("Chief McNelly") and the City of LaGrange (the "City") are entitled to summary judgment because there was no underlying violation of Plaintiff's constitutional rights. Moreover, Chief McNelly and the City are entitled to summary judgment on Plaintiff's failure to train claim because the training provided was not inadequate and they were not "deliberately indifferent" to Plaintiff's constitutional rights. Plaintiff's failure to train claim against Chief McNelly is also barred by qualified immunity. Additionally, the City is entitled to summary judgment on Plaintiff's *respondeat superior* claim because a local government may not be sued under §1983 for an injury inflicted solely by its employees or agents on a theory of *respondeat superior*.[1]

## II.      THERE IS NO GENUINE ISSUE OF MATERIAL FACT

As more thoroughly set forth in Defendants' Reply to Plaintiff's Response to Defendants' Statement of Facts and Plaintiff's Statement of Additional Facts, there is no genuine issue of material fact precluding summary judgment.

---

[1] Plaintiff states in his response that he preserves this issue for appeal, but he does not specifically challenge that the City is entitled to summary judgment on Plaintiff's *respondeat superior* claim. [Doc. No. 75- Pl's Response at p. 33] Thus, Defendants will not further address that claim in their response.

01389261.DOCX/2565-739

III.     **LEGAL ARGUMENT**

     A.     **Officer Howell's Seizure of the Dog Did Not Violate Plaintiff's Fourth Amendment Rights**

The Eighth Circuit in <u>Andrews v. City of West Branch, Iowa</u>, 454 F.3d 914, 918 (8th Cir. 2006) clearly adopted the "objective reasonableness" standard in analyzing the reasonableness of a police officer's seizure of a dog by shooting and killing it.   <u>Id.</u>, at 918; <u>citing</u> <u>Graham v. Connor</u>, 490 U.S. 386, 295, 109 S.Ct. 1865, 109 L.Ed.2d 443 (1989).   Specifically, the Eighth Circuit acknowledged that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer; it does not turn on the subjective intent of the officer."   <u>Andrews</u>, 454 F.3d at 918; <u>citing</u> <u>Graham</u>, 490 U.S. at 396-97, 109 S.Ct. 1865.   It is clear from that language and the Eighth Circuit's citation to <u>Graham</u> that the same "objective reasonableness" standard applied to analyze the constitutionality of a police officer's use of force against a person is also to be applied to analyze the constitutionality of a police officer's use of force against a dog, or other animal.   <u>See</u> <u>Andrews</u>, 454 F.3d at 918.

Plaintiff disagrees and claims that a police officer's use of force against a dog should not be analyzed under the well-established "objective reasonableness" standard.   [Doc. No. 75- Pl's Response at pp. 14-16]   In support of Plaintiff's contention, Plaintiff states that "the shooting and killing of a dog is unreasonable when the dog presented no danger and 'when non-lethal methods of capture would have been successful.'"   [Doc. No. 75- Pl's Response at p. 15-16; <u>quoting</u> <u>Andrews</u>, 454 F.3d at 918]   A review of the complete sentence cited by Plaintiff, however, demonstrates that Plaintiff's argument misstates the Eighth Circuit's ruling in <u>Andrews</u>.

The complete sentence states, "[o]ther circuits have held that an officer commits an unreasonable, warrantless seizure of property, in violation of the Constitution, when he shoots and kills an individual's family pet when that pet presented no danger and when non-lethal

methods of capture would have been successful." Id.; citing Brown v. Muhlenberg Tp., 269 F.3d 205 (3rd Circuit 2001); Fuller v. Vines, 36 F.3d 65, 68 (9th Cir. 1994)  Accordingly, even a cursory reading of that sentence demonstrates that the Eighth Circuit was merely commenting on instances where other circuits purportedly found that a police officer's seizure of a dog was unreasonable. The Eighth Circuit never held, or even suggested, in Andrews that that was the test to be utilized in judging the reasonableness of a police officer's seizure of a dog.  Furthermore, the rulings in Brown and Fuller do not support the proposition for which they were cited by the Eighth Circuit in Andrews.

In Brown, the plaintiffs' three year old Rottweiler had wandered out of the plaintiffs' fenced yard through a broken gate and into an adjacent parking lot.  Brown, 269 F.3d at 208. The plaintiffs' dog was wearing a large, bright pink collar that had numerous tags attached to it, including a tag containing the plaintiffs' address and phone number.  Id. at 208-09.  A police officer saw the dog and walked towards it.  Id., at 209.  As the police officer approached the dog, he clapped his hands and called to the dog.  Id.  The dog barked several times and then withdrew from the police officer.  Id.  The police officer followed the dog and came to within ten to twelve feet of the dog while the dog was standing still.  Id.  The dog was not barking at the police officer and a witness testified that the dog "'did not display any aggressive behavior towards [Officer Eberly] and never tried to attack to him.'"  Id.(brackets in original).

As the police officer stood ten to twelve feet from the dog, one of the plaintiffs happened to look out of an open window and saw the police officer standing about fifty feet away and facing her dog.  Id.  She then saw the police officer reach for his gun.  Id.  She shouted as loudly as she could out of the open window "'That's my dog, don't shoot!'"  Id.  The police officer hesitated for a few seconds and then pointed his gun at the dog.  Id.  The female plaintiff again

shouted "'No!'" Id. The police officer then shot the dog and continued shooting as the dog tried to crawl away. Id. In total, the police officer fired five shots at the dog. Id.

In analyzing the reasonableness of the seizure, the Third Circuit specifically held that the capturing of a stray dog does not violate the Fourth Amendment. Id., at 210. The Third Circuit also acknowledged that the government's interest in protecting life and property may justify the killing of a family pet, even when the owner is present, when there is reason to believe that the pet poses an imminent danger. Id., at 201-11. The court, however, found that that does not mean that an officer can kill a family pet "when it poses no immediate danger and the owner is looking on, obviously desirous of retaining custody." Id., at 211. The Third Circuit then ruled that the police officer's shooting of the dog in that case "*could* be found to be an unreasonable seizure within the meaning of the Fourth Amendment" Id.(emphasis added). Accordingly, the Third Circuit never held that the police officer's action in that case violated the Fourth Amendment as a matter of law. It only ruled that, given the facts in that case, a jury *could* find that the police officer's shooting and killing of the dog was unreasonable. Id.

The Third Circuit, however, never analyzed, or even mentioned, any non-lethal methods the police officer could have used to secure the dog. See generally Id., at 208-12. Accordingly, the ruling in Brown does not support a contention that the determination of the "reasonableness" of a police officer's killing of a family pet includes an analysis of whether or not non-lethal methods were available to the police officer. Instead, the Third Circuit's ruling in Brown clearly supports Defendants' contention that a police officer may shoot and kill a dog, even a family pet, if that dog poses and imminent danger to life or property. See Id., at 210-11.

Furthermore, any reliance on the ruling in Brown in this case beyond the general proposition that a police officer may kill a dog, even a family pet, if the dog poses an imminent

danger, is misplaced due to the vast differences between the facts in <u>Brown</u> and the facts in this case. The most distinguishable fact between the two cases is that the dog in <u>Brown</u>, unlike here, never acted aggressively towards the police officer. <u>Id.</u>, at 209. Here, the dog was acting very aggressively towards Officer Howell and had broken the chain tying it to the patrol truck and had broken the "catchpole." As a result, unlike the dog in <u>Brown</u>, the dog in this case posed an imminent danger to Officer Howell and others that justified Officer Howell's shooting and killing the dog.

Additionally, the dog in <u>Brown</u> had a bright pink collar on with identification tags that would have clearly indicated to any reasonable police officer that the dog was family pet. <u>Id.</u>, at 208-10. Here, the dog was not wearing a collar and, after a diligent search of the neighborhood and LaGrange's dog registration records, no owner could be located. As a result, there was nothing to indicate to Officer Howell that anyone even owned this dog and it would have been reasonable to conclude that it had been abandoned by its owner.

Furthermore, although the court never specifically stated that the police officer in <u>Brown</u> heard the plaintiff shout that it is was her dog, it appears from the court's mentioning that the police officer hesitated for a few seconds after the plaintiff yelled that it was her dog and do not shoot it that the police officer did, in fact, hear that statement by the plaintiff. <u>Id.</u> at 209. Again, in this case, there was no indication of whom, if anyone, owned the dog and there was certainly no one near the dog when Officer Howell shot the dog indicating that he/she was the owner and was desirous of assuming custody of the dog.

The ruling in <u>Brown</u> does not support Plaintiff's contention that the availability of non-lethal methods should be considered in determining the reasonableness of Officer Howell's shooting and killing of the dog. The sole question is whether the dog posed an imminent danger

01389261.DOCX/2565-739

to Officer Howell and others.  As a result, the ruling in <u>Brown</u> supports Defendants' position that Officer Howell was reasonable in shooting and killing the dog in this case because it posed an imminent danger to him and others.

The Eighth Circuit's citation to <u>Fuller v. Vines</u>, 36 F.3d 65 (9th Cir. 1994) in <u>Andrews</u> is also misplaced.  In <u>Fuller</u>, the plaintiffs alleged that they were in their front yard with their dog when a police officer investigating another matter walked by the yard.  <u>Id.</u>, at 66.  As the police officer walked by, the plaintiffs further alleged that their dog simply stood up from where it had been lying in the yard.  <u>Id.</u>  The police officer, however, claimed that the dog charged at him while barking and growling at him.  <u>Id.</u>  The police officer shot and killed the dog.  <u>Id.</u>  One of the plaintiffs also claimed that the police officer then pointed the gun at him, although the circumstances surrounding that event were disputed by the parties. <u>Id.</u>, at 66-67.

The plaintiffs subsequently filed a complaint claiming that the shooting of their dog and the pointing of the gun at one of them violated their substantive and procedural due process rights.  <u>Id.</u>, at 67.  The plaintiffs also asserted state law claims for emotional distress, assault, and destruction of property.  <u>Id.</u>  The defendants filed a motion for summary judgment and, in response, the plaintiffs sought leave to file a first amended complaint adding a claim that the shooting of the plaintiffs' dog constituted an unconstitutional seizure in violation of the Fourth Amendment.  <u>Id.</u>  The district court granted the defendants' motion for summary judgment on the plaintiffs' due process claims and dismissed the plaintiffs' pendent state law claims.  <u>Id.</u>  The district court also denied the plaintiffs' motion for leave to file a first amended complaint because it "would not cure the deficiencies in the complaint."  <u>Id.</u>  The plaintiffs subsequently appealed those rulings.

The Ninth Circuit acknowledged that the killing of the plaintiffs' dog constituted a

seizure under the Fourth Amendment. <u>Id.</u>, at 68. Accordingly, the Ninth Circuit ruled that the plaintiffs' first amended complaint "adequately alleged a cause of action under the Fourth Amendment for the killing of their dog…, and therefore, the motion to amend should have been granted." <u>Id.</u> Furthermore, the court ruled that the affidavits submitted by the plaintiffs in response to the defendants' motion for summary judgment created a genuine issue of material fact as to the plaintiffs' Fourth Amendment claim that was sufficient to defeat the defendants' motion for summary judgment on that claim. <u>Id.</u>, at 69.

The Ninth Circuit in <u>Fuller</u> never determined that the police officer's seizure of the dog was unreasonable. <u>See generally Id.</u> It only found that the first amended complaint stated a cognizable claim under the Fourth Amendment and that a genuine issue of material fact precluded summary judgment on that issue. <u>Id.</u>, at 68-69. In this case, there is no genuine issue of material fact and the undisputed material facts demonstrate as a matter of law that Officer Howell's shooting of the dog was reasonable because the dog posed an imminent danger to Officer Howell and others.

Additionally, the Ninth Circuit never analyzed, or even addressed, whether non-lethal methods of securing the dog were available to the officer. <u>See generally Id.</u> Accordingly, the ruling in <u>Fuller</u> does not support Plaintiff's contention in this case that the reasonableness of Officer Howell's shooting of the dog should include a consideration of whether non-lethal methods were available to Officer Howell. Contrary to Plaintiff's contention, the Constitution only requires "that the seizure be objectively reasonable, not that the officer pursue the most prudent course of conduct as judged by 20/20 hindsight vision," even though it could be argued in many instances that the police officer in question could have used other methods to effectuate

the seizure and that the police officer's actions may not have been the most prudent. <u>Cole v. Bone</u>, 993 F.2d 1328, 1334 (8th Cir. 1993)(citations omitted).

In this case, the only relevant inquiry is whether Officer Howell's seizure of the dog by shooting and killing the dog was objectively reasonable as judged from the perspective of a reasonable police officer at the scene. <u>See</u> <u>McCoy v. City of Monticello</u>, 342 F.3d 842, 848 (8th Cir. 2003)(citations omitted). The availability of non-lethal methods and/or whether or not Officer Howell could have used other methods to effectuate the seizure is irrelevant to that inquiry. <u>See</u> <u>Cole</u>, at 1333-34.

Plaintiff further argues that the Court should deny Defendants' motion for summary judgment based upon the ruling in <u>Gaulden v. City of Desloge, Mo.</u>, 2009 WL 1035346 (E.D. Mo. 2009). In <u>Gaulden</u>, a male police officer investigated a citizen complaint that someone had placed feces on the seat of the citizen's vehicle. <u>Id.</u>, at *1. The police officer then noticed similar looking feces in the plaintiff's neighboring yard and the police officer went to speak to the plaintiff. <u>Id.</u> The plaintiff answered the door and the police officer instructed her to step outside. <u>Id.</u> The plaintiff asked why he wanted to speak with her and the police officer said he would tell her if she stepped outside. <u>Id.</u>

As the court specifically notes, there are vast differences in the parties' testimony from this point forward. <u>Id.</u> The plaintiff claims that the police officer grabbed her arm and pulled her outside, but the police officer denied that allegation. <u>Id.</u> Instead, the police officer claims that the plaintiff began cursing and ordered her two German Shepherds to attack him as the plaintiff angrily cursed at him. <u>Id.</u>, at *2-3. The police officer then claimed that the dogs came running towards him. <u>Id.</u>, at *3. The plaintiff, however, claimed that the dogs simply walked out of the

01389261.DOCX/2565-739

house while the police officer was pulling her from her house and they were trotting and jumping next to the police officer.  Id.  The police officer then shot and killed one of the dogs.  Id.

In addressing the plaintiff's unreasonable seizure claim against the police officer, the court first acknowledged the well-established law that a meaningful interference with a person's possessory interests in property constitutes a seizure of that property.  Id., at *12(citations omitted). The court then found that "[s]uch a seizure is unconstitutional if it is unreasonable and reasonableness is 'judged from the perspective of a reasonable officer; it does not turn on the subjective intent of the officer.'"  Id.; quoting Andrews, 454 F.3d at 918.  Due to the parties' factual dispute, there was a genuine issue of material fact that prevented the court from determining whether the dog posed an imminent danger to the officer and precluded summary judgment.  Id.

Here, there is no such factual dispute.  Officer Howell and Officer Powell have provided testimony regarding the circumstances surrounding the seizure of Plaintiff's dog and limited portions of the circumstances surrounding the seizure of the dog were recorded on a video camera.  In fact, other than what was recorded on the video, Officer Howell and Officer Powell were the only two individuals to witness the events surrounding the seizure of the dog. Although Plaintiff has offered numerous interpretations and speculation about what occurred, Plaintiff was not present for any of the events surrounding the seizure and, thus, Plaintiff's interpretations, speculation, and other allegations about those events are not supported by admissible evidence and should be disregarded by the Court.  See Howard v. Columbia Public School District, 363 F.3d 797, 801 (8th Cir. 2004)(In ruling on a motion for summary judgment, a court shall only consider admissible evidence and "any allegations not supported by admissible

evidence should be disregarded by the court.").  As a result, there is no genuine issue of material fact regarding the seizure of the dog and Officer Howell is entitled to summary judgment.

The undisputed facts demonstrate that Officer Howell was confronted by a large dog that did not have a collar identifying the owner and that exhibited aggressive behavior preventing Officer Howell from securing the dog on numerous occasions.  Therefore, the undisputed facts demonstrate that Officer Howell's seizure of the dog was objectively reasonable because the dog posed an imminent danger to him, Officer Powell, and other individuals and the seizure did not violate the Plaintiff's Fourth Amendment rights as a matter of law.  See generally Andrews, 454 F.3d at 918.  Consequently, Officer Howell is entitled to summary judgment on Plaintiff's claim in Count I.  See Id.

**B.      Officer Howell Is Entitled To Qualified Immunity Because The Law Was Not Clearly Established Such That A Reasonable Police Officer Would Have Known That Shooting And Killing A Dog That Posed An Imminent Threat To His Safety Would Have Violated The Owner's Fourth Amendment Rights**

Even assuming Officer Howell's use of force violated the Plaintiff's Fourth Amendment rights, Officer Howell is still entitled to qualified immunity unless the right violated was clearly established at the time of the conduct such that a reasonable officer would have understood that his conduct violated that constitutional right.  Vaughn v. Greene County, Ark., 438 F.3d 845, 850 (8th Cir. 2006)(citations omitted).  "For a right to be deemed clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Serna v. Goodno, 567 F.3d 944, 953 (8th Cir. 2009)(internal quotations and citations omitted).

Plaintiff contends in his response that "the law was clearly established that Plaintiff had a right to be free from unreasonable seizure of his property."  [Doc. No. 75- Pl's Response at p. 17]  That is not the relevant inquiry, however, in determining whether Officer Howell is entitled

to qualified immunity in this case. The determination of whether the law is clearly established must focus on the specific facts of the case before the court and not on broad legal principles. See Serna, 567 F.3d at 952. The undisputed facts in this case demonstrate that the dog had repeatedly acted aggressively towards Officer Howell and the dog was not firmly secured by the "catchpole." Because the dog was not firmly secured and given the aggressive conduct of the dog, a reasonable police officer would have understood that it posed an imminent danger and would not have understood that the shooting of the dog would violate Plaintiff's Fourth Amendment rights. For the reasons set forth herein and in Defendants' memorandum in support of their motion for summary judgment, Officer Howell did not violate any clearly established law when he shot and killed the dog and he is entitled to qualified immunity. See Id.

**C.** **Chief McNelly is Entitled to Summary Judgment On The Claims In Count II Because There Was No Violation of Plaintiff's Constitutional Rights, Chief McNelly Did Not Directly Participate in Any Allegedly Unconstitutional Conduct, There Was No Failure to Train Officer Howell, and Plaintiff's Claims are Barred by Qualified Immunity**

**1.** **Chief McNelly is Entitled to Summary Judgment Because There Was No Violation of Plaintiff's Constitutional Rights**

The parties agree that in order for Chief McNelly to be liable under §1983 Plaintiff must first establish that a violation of his constitutional rights actually occurred in this case.[2] See Sanders v. City of Minneapolis, Minnesota, 474 F.3d 523, 526 (8th Cir. 2007)(citations omitted). As set forth above, there was no violation of Plaintiff's constitutional rights and, therefore, Plaintiff's claims against Chief McNelly must also fail. See Id.

Even assuming that Officer Howell's shooting of the dog violated Plaintiff's Fourth Amendment rights, a supervising officer, such as Chief McNelly, can only be held liable under §1983 if he directly participated in the shooting of the dog or if his failure to train or supervise

---

[2] Plaintiff set forth this same legal standard in his response. [Doc. No. 75- Pl's Response at p. 20]

Officer Howell caused the deprivation of Plaintiff's Fourth Amendment rights.  See Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010); Otey v. Marshall, 121 F.3d 1150, 1155 (8th Cir. 1997); Tilson v. Forrest City Police Dept., 28 F.3d 802, 806-07 (8th Cir. 1994).

**2.    Chief McNelly is Entitled to Summary Judgment Because He Did Not Directly Participate in Officer Howell's Seizure of the Dog**

It is undisputed that Chief McNelly was not physically present at the scene when Officer Howell shot the dog.  [Doc. No. 75- Pl's Response at p. 21]  The undisputed facts also demonstrate that Chief McNelly never ordered or instructed Officer Howell to shoot the dog. (Fact 133)  Moreover, Plaintiff has not produced any admissible evidence demonstrating that Chief McNelly ever suggested, encouraged, or even discussed the shooting of the dog with either Officer Howell or Officer Powell prior to Officer Howell shooting the dog.  In fact, Chief McNelly did not even know that Officer Howell had shot the dog until after the fact.  (Fact 134) Consequently, the undisputed admissible evidence in this case demonstrates that Chief McNelly was not physically present when Officer Howell shot the dog and that Chief McNelly never instructed, ordered, encouraged, or even suggested that Officer Howell shoot the dog. Accordingly, Chief McNelly cannot be deemed to have directly participated in any alleged violation of Plaintiff's Fourth Amendment rights.  See Parish, 594 F.3d at 1002 (A supervisor cannot be found to have directly participated in a constitutional violation if the supervisor was not present when the alleged constitutional violation occurred and the supervisor never ordered, directed, or even suggested to the subordinate to engage in the allegedly unconstitutional behavior.)

Despite the undisputed facts, Plaintiff contends that Chief McNelly did directly participate in Officer Howell's shooting of the dog.  Plaintiff first contends that there are some discrepancies between the testimony of Chief McNelly, Officer Howell, and Officer Powell

regarding the telephone calls made to Chief McNelly from the scene of the shooting. [Doc. No. 75-Pl's Response at p. 21-22] Specifically, Plaintiff claims that there is a discrepancy in their testimony regarding the number of telephone conversations that took place and a discrepancy of whether Chief McNelly instructed the officers to continue to try to pick up the dog to place it in the patrol and/or whether Chief McNelly instructed the officers to use the catchpole. [Id.]

Plaintiff fails to explain, however, how these minor discrepancies that do not even pertain to the shooting of the dog demonstrate that Chief McNelly directly participated in Officer Howell's shooting of the dog. Contrary to Plaintiff's contentions, as stated above, the undisputed facts demonstrate that Chief McNelly never instructed or ordered Officer Howell to shoot the dog. Furthermore, the alleged discrepancies do not create a genuine issue of material fact precluding summary judgment because they will not affect the determination of whether Chief McNelly directly participated in Officer Howell's actual shooting of the dog or the determination of whether Officer Howell's shooting of the dog was reasonable. Accordingly, those allege discrepancies are irrelevant and should be ignored by the Court. See Consesco Life Ins. Co. v. Williams, 620 F.3d 902, 910 (8th Cir. 2010)(Factual disputes that will not affect the outcome will not defeat a motion for summary judgment and should be ignored by the court.)(citations omitted).

Plaintiff further contends that an inference can be drawn that Chief McNelly knew the owner of the dog prior to Officer Howell's shooting of the dog. Specifically, Plaintiff asserts that "[t]he inference can be made and the evidence supports that Defendant Howell, Officer Powell and Defendant Howell [sic] knew that Plaintiff owned the at-large dog." [Doc. No. 75-Pl's Response at p. 22] The inference suggested by Plaintiff is based on nothing more than Plaintiff's wild speculation and should be disregarded by the Court. See Hauser v. Equifax,

Inc., 602 F.2d 811, 814 (8th Cir. 1979)(The non-moving party is only entitled to *reasonable* inferences that can be drawn from the evidence without resort to speculation.)(emphasis added).

Plaintiff nonetheless appears to assert that he is entitled to the inference because Plaintiff submitted an affidavit by Mark Campbell, the former LaGrange city administrator, that stated that Plaintiff was the only person in the area that owned the breed of dog that was shot by Officer Howell and that Officer Powell went door-to-door attempting to locate the dog's owner. [Doc. No. 75- Pl's Response at p. 22] Other than Plaintiff's own biased speculation, there is no reasonable inference that can be drawn from that allegation that Chief McNelly knew who owned the dog in question and Plaintiff's contention should be ignored by the Court. See Hauser, at 814.

Plaintiff has also set forth impertinent allegations that Chief Nelly used a racial slur at some point in time prior to March 31, 2010 and that he was charged with embezzlement in Oklahoma. [Doc. No. 75- Pl's Response at p. 22] Again, Plaintiff fails to explain how those allegations demonstrate that Chief McNelly directly participated in Officer Howell's shooting of the dog. Those allegations are clearly immaterial in determining if Chief McNelly directly participated in Officer Howell's shooting of the dog or in the reasonableness of Officer Howell's shooting of the dog and should be ignored by the Court in ruling on Defendants' motion for summary judgment. See Consesco, 620 F.3d at 910.

Even assuming a proper inference could be drawn based upon the admissible facts in this case that Chief McNelly knew who owned the dog, Plaintiff fails to explain how Chief McNelly knowing who the owner of the dog was demonstrates that Chief McNelly directly participated in Officer Howell's shooting of the dog. The undisputed facts in this case demonstrate that Chief McNelly did not order or instruct Officer Howell to shoot the dog, or otherwise directly

01389261.DOCX/2565-739

participate in Officer Howell's shooting of the dog.  As a result, Chief McNelly cannot be held liable on Plaintiff's §1983 against Chief McNelly on the basis that Chief McNelly directly participated in the allegedly unconstitutional act.  See Parrish, 594 F.3d at 1001.

### 3. Chief McNelly is Entitled to Summary Judgment on Plaintiff's Failure to Train Claim

The parties agree that in order for Plaintiff to prevail on his failure to train against Chief McNelly Plaintiff must produce sufficient evidence demonstrating that Chief McNelly "(1) had notice of a pattern of unconstitutional acts committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing injury to… [Plaintiff]."[3]  Livers v. Schenck, 700 F.3d 340, 355 (8th Cir. 2012)(internal quotation marks and citations omitted).  Plaintiff, however, has failed to produce, and will not be able to produce, any admissible evidence demonstrating that Chief McNelly had notice of a pattern of unconstitutional acts being committed by his subordinates.  In fact, Plaintiff's response fails to set forth any prior unconstitutional acts that were committed by any of Chief McNelly subordinates.  Furthermore, the undisputed facts demonstrate that Chief McNelly was not deliberately indifferent to individuals' constitutional rights.

### a. There Was No Pattern of Unconstitutional Acts Being Committed by Chief McNelly's Subordinates

Plaintiff has failed to produce any admissible evidence demonstrating that there was a pattern of unconstitutional acts being committed by Chief McNelly's subordinates.  In fact, Plaintiff has only offered the affidavit of Mark Campbell that claims that on one occasion "an at-large dog was shot *at* in the City of LaGrange, Missouri by a LaGrange police officer."

---

[3] Plaintiff sets forth this same legal standard in his response.  [Doc. No. 75- Pl's Response at p. 24]

(emphasis added).  No further details were provided regarding the alleged incident.[4]  In analyzing the bare allegation, it is important to note that the allegation only claims that a dog was shot *at*, not that any dog was actually shot, or even injured, by a LaGrange police officer.  A police officer shooting at a dog is not a "meaningful interference" with the owner's possessory interest in the dog to constitute a "seizure" under the Fourth Amendment and, therefore, the allegation by itself does not demonstrate that the alleged incident was even an unconstitutional act.  See Andrews, 454 F.3d 914, 918.

Even assuming that a police officer shooting at a dog is a "seizure," there are no further details regarding that shooting and, therefore, it is still impossible to determine if the alleged shooting was an unconstitutional act.  If the dog posed an imminent danger to life or property, then the act of shooting at the dog was reasonable and did not violate the owner's Fourth Amendment rights.  See Andrews, 454 F.3d at 918.  Simply put, the one sentence allegation in Campbell's affidavit is too vague and uncertain to demonstrate the occurrence of an unconstitutional act.  Furthermore, even if Plaintiff had presented sufficient facts to demonstrate that the alleged shooting constituted an unconstitutional act, a single incident is usually insufficient to support a claim for supervisory liability.  See Bell v. Stubblefield, 2007 WL 4245000 at *2 (E.D. Mo. Nov. 29, 2007); quoting Howard v. Adkison, 887 F.2d 134, 138 (8th Cir. 1989).

Contrary to Plaintiff's contentions, the undisputed facts in this case unequivocally demonstrate that there was no pattern of prior unconstitutional acts having been committed by Chief McNelly's subordinates in their efforts to capture at-large dogs. There were no incidents of

---

[4] Defendants believe that it is highly improbable that Campbell, the former city administrator and not a police officer, just happened to be present when this alleged shooting took place and, therefore, Defendants believe Campbell's allegations is based solely on hearsay.

a LaGrange police officer injuring or killing an at-large dog while trying to capture it prior to March 31, 2010. (Facts 50-51 and 54-55) In fact, there were no indications that any LaGrange police officer had any problems in capturing at-large dogs prior to March 31, 2010 (Facts 48 and 52) and there were no citizens' complaints made against any LaGrange police officer relating to capturing at-large dogs prior to March 31, 2010. (Facts 49 and 56) The undisputed facts in this case demonstrate that there was no pattern of unconstitutional acts being committed by Chief McNelly's subordinates, which is an essential element of Plaintiff's failure to train claim against Chief McNelly. See Livers, 700 F.3d at 355. Accordingly, Chief McNelly is entitled to summary judgment on Plaintiff's failure to train claim in Count II of Plaintiff's First Amended Complaint. See Id.

> b. Chief McNelly Was Not Deliberately Indifferent To or Tacitly Authorized Any Allegedly Unconstitutional Acts[5]

In analyzing the second essential element of a failure to train claim, the parties agree that in order to prove that Chief McNelly was deliberately indifferent to or tacitly authorized allegedly unconstitutional acts of his subordinates due to allegedly inadequate training procedures, Plaintiff must demonstrate that Chief McNelly "had notice that the training procedures…were inadequate and likely to result in a constitutional violation."[6] Id. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick v. Thompson, 131 S.Ct. 1350,

---

[5] Plaintiff presented a majority of his legal arguments regarding the "deliberate indifference" standard in response to the City's arguments in favor of its motion for summary judgment on Plaintiff's failure to train claim against it and, therefore, Defendants have addressed those arguments in the section below pertaining to the City. Defendants, however, incorporate those arguments herein by reference.

[6] Plaintiff set forth this same legal standard in his response. [Doc. No. 75- Pl's Response at p. 24]

1359-60, 179 L.Ed.2d 417 (2011)(citations omitted).  This Court also has held that "[A] failure to train claim generally requires the municipality to have prior notice of the officers' misbehavior and to act with deliberate indifference." Teasley v. Forler, 548 F.Supp.2d  694, 706 (E.D. Mo. 2008).  In this case, the undisputed facts demonstrate that there was no pattern of similar, prior constitutional violations involving capturing at-large dogs to establish that the Chief McNelly was "deliberately indifferent."

The undisputed facts demonstrate that neither Officer Howell, nor any other LaGrange police officers had injured or killed an at-large dog while trying to capture it prior to March 31, 2010.  (Facts 50-51 and 54-55)  Moreover, neither Officer Howell, nor any of LaGrange police officers had had problems in capturing at-large dogs prior to March 31, 2010.  (Facts 48 and 52). The LaGrange police department had also never received any complaints about capturing at-large dogs in the City prior to March 31, 2010.  (Facts 49 and 56).

In response to those undisputed facts, Plaintiff has only offered the aforementioned affidavit of the former city administrator, Mark Campbell.  As stated above, however, the single allegation in that affidavit that, at some point in time, a LaGrange police officer shot at a dog is too vague to determine if that alleged occurrence even amounted to a constitutional violation, let alone demonstrate that the City was "deliberately indifferent."  Accordingly, Plaintiff has failed to demonstrate a pattern of similar constitutional violations and Chief McNelly is entitled to summary judgment.  See Teasley, 548 F.Supp.2d  at 706.

Plaintiff, however, argues in his response that notice of a pattern of similar unconstitutional behavior does not have to be demonstrated for Chief McNelly to be held liable

01389261.DOCX/2565-739

on a failure to train claim when the need for training is patently obvious.[7]  [Doc. No. 75- Pl's Response at p. 25]  Besides Plaintiff's speculation and bare allegations, however, Plaintiff has failed to specifically explain how the alleged inadequacy of the training was patently obvious. Furthermore, Plaintiff has not produced any admissible evidence detailing the extent to which the training was allegedly inadequate.  Plaintiff's unsupported allegations are insufficient to defeat Defendants' properly supported motion for summary judgment and should be disregarded by the Court.  See Howard, 363 F.3d at 801.

In addition to Plaintiff's unsupported allegations, Plaintiff has mischaracterized the extent of training received by Officer Howell throughout his response.  In doing so, Plaintiff repeatedly cites to Officer Powell's deposition testimony on page 11, line 25 to page 12, line 17.  Even more specifically, Plaintiff cites to Officer Howell's response to a question within that cited portion that Officer Howell's training in capturing at-large dogs was "[b]y word-of-mouth using a chain, a collar, and a catch pole."  [Pl's Ex. 3- Howell Depo. at p. 25, line 25 to p. 12, line 4] Plaintiff was subsequently asked what he was told and Officer Howell testified "[w]e went over all - - everything that consists of capturing a dog."  [Pl's Ex. 3- Howell Depo. at p. 12, lines 14-17] Plaintiff's failure to develop what Officer Howell meant when he testified that his training included "everything that consists of capturing a dog" does not limit or preclude Officer Howell from testifying now as to the extent of that training.  It was incumbent upon Plaintiff to develop that testimony if he believed that Officer Howell's response was vague and, his failure to do so, does not limit Officer Howell's ability to testify as to his training.

---

[7]  As more thoroughly set forth below in the section regarding the Plaintiff's failure to train claim against the City, this narrow exception is only applicable in circumstances where there was absolutely no training provided and, therefore, it is not applicable in this case.  See Thelma v. Board of Ed. Of City of St. Louis, 934 F.2d 929, 934 (8th Cir. 1991).  Defendants incorporate those arguments herein by reference.

01389261.DOCX/2565-739

Consistent with Officer Howell's testimony that his training consisted of "everything," the undisputed facts in this case demonstrate that Chief McNelly provided training to Officer Howell regarding capturing at-large dogs when Officer Howell was hired by the City. (Facts 37-44). Officer Howell was trained to use a collar and chain to secure non-aggressive dogs and then to pick the dog up with his hands and place it in the patrol truck. (Facts 38-39). Chief McNelly also trained Officer Howell to use the "catchpole" to secure aggressive dogs. (Facts 40-44). Furthermore, the undisputed facts demonstrate that neither Officer Howell, nor any other LaGrange police officers had injured or killed an at-large dog while trying to capture it prior to March 31, 2010. (Facts 50-51 and 54-55). Moreover, neither Officer Howell, nor any LaGrange police officers had had problems in capturing at-large dogs prior to March 31, 2010. (Facts 48 and 52). The LaGrange police department had also never received any complaints about capturing at-large dogs in the City prior to March 31, 2010. (Facts 49 and 56).

Furthermore, it is undisputed that the LaGrange Police Department has a "Use of Force" policy that specifically mandates that "[t]he use of lethal force is considered a measure of last resort…" and, as applicable to this case, is limited to situations where the police officer reasonably believes that there is "an immediate threat of death or serious physical injury" to the police offer or others. (Facts 28-30; Ex I- Use of Force Policy). That standard for the use of lethal force is virtually identical to the legal standard that lawfully permits a police officer to shoot and kill an at-large dog that poses an imminent danger to the police officer or others. See Andrews, 454 F.3d at 918. Thus, the "Use of Force" policy specifically prohibits the use of lethal force unless the police officer is confronted with a situation where lethal force is permitted under the law. See Id. Moreover, Plaintiff does not contend that the "Use of Force" was in any way inadequate or unconstitutional.

01389261.DOCX/2565-739

In response to those undisputed facts, Plaintiff has only offered the aforementioned affidavit of the former city administrator, Mark Campbell. As stated above, however, the single allegation in that affidavit that, at some point in time, a LaGrange police officer shot at a dog is too vague to determine if that alleged occurrence even amounted to a constitutional violation, let alone demonstrate that the inadequacy of the training procedures was patently obvious.

Plaintiff further contends that the telephone calls made by Officer Howell and Officer Powell requesting assistance in dealing with the situation demonstrate that those officers were inadequately trained. [Doc. No. 75- Pl's Response at p. 24] In other words, Plaintiff is contending that police officers who seek assistance from superior officers in order to better perform their duties are inadequately trained. Clearly, such a determination would only serve to severely diminish the effectiveness of police officers by restricting their ability to seek assistance to better perform their duties and would place the safety of police officers and the general public in jeopardy. As a result, the mere fact that the officers sought assistance in dealing with the dog in question does not demonstrate that the City's training was inadequate.

The training given by Chief McNelly and the lack of any prior problems that Officer Howell or any other LaGrange police officer had in capturing at-large dogs prior to March 31, 2010 negates the second essential element of Plaintiff's failure to train claim against Chief McNelly and he is entitled to summary judgment on that claim. See Livers, 700 F.3d at 355.

### 4. Chief McNelly is Entitled to Qualified Immunity

Chief McNelly is entitled to qualified immunity on Plaintiff's claim that he directly participated in the shooting of the dog in question because the law was not clearly established such that a reasonable police officer would have understood that instructing a subordinate police officer to continue to use non-lethal methods to capture an at-large dog would have violated the

22

dog's owner's constitutional rights. See Vaughn, 438 F.3d at 850. As a result, Chief McNelly is entitled to qualified immunity on Plaintiff's claim that he directly participated in the allegedly unconstitutional seizure of the dog.

Nevertheless, Plaintiff states that "Defendant McNelly's direct participation in ordering Defendant Howell to shoot Plaintiff's dog... cannot be deemed objectively reasonable." [Doc. No. 75- Pl's Response at p. 26] Plaintiff failed to provide any admissible evidence to support that baseless allegation with any admissible evidence. In fact, the undisputed facts in this case specifically demonstrate that Chief McNelly never instructed or ordered Officer Howell to shoot the dog (Fact 133) and, therefore, Plaintiff's unsupported allegations should be disregarded by the Court. See Howard, 363 F.3d at 801.

Chief McNelly is also entitled to qualified immunity on Plaintiff's failure to train to claim. The parties agree that "a supervisory officer is entitled to qualified immunity for a §1983 failure to train action unless a reasonable supervisor would have known that his training program (or lack thereof) was likely to result in the constitutional violation at issue."[8] Parrish, 594 F.3d at 1002(citations omitted). Here, the undisputed facts establish that a reasonable supervisor would not have known that the training program and procedures at the LaGrange Police Department were likely to result in an allegedly unconstitutional shooting and killing of a dog.

The undisputed facts demonstrate that there were no incidents of a LaGrange police officer injuring or killing an at-large dog while trying to capture it prior to March 31, 2010. (Facts 50-51 and 54-55). In fact, there were no indications that any LaGrange police officer had any problems in capturing at-large dogs prior to March 31, 2010 (Facts 48 and 52) and there

---

[8] Plaintiff sets forth the same legal standard in his response. [Doc. No. 75- Pl's Response at p. 26]

were no citizens' complaints made against any LaGrange police officer relating to capturing at-large dogs prior to March 31, 2010. (Facts 49 and 56).

In addition, as stated above, there was a general use of force policy that prohibited the use of lethal force unless the police officer reasonably believed that an immediate threat of death or serious physical injury existed. (Facts 28-30; Ex I- Use of Force Policy). As stated above, that policy is consistent with the legal standard that lawfully permits a police officer to shoot and kill a dog that poses an imminent danger to life or property. See <u>Andrews</u>, 454 F.3d at 918. Therefore, a reasonable supervisor would not have known that the training provided pursuant to the mandated use of force training procedures that all LaGrange police officers must follow would result in a police officer violating that policy and shooting an at-large dog that did not pose an imminent danger.

As for general training regarding capturing at-large dogs, the undisputed facts demonstrate that Chief McNelly provided such training to Officer Howell and there were no indications that Officer Howell or any other police officer had had problems in capturing at-large dogs prior to March 31, 2010. (Facts 37-44, 48, and 52). Based upon the lack of any prior problems in capturing at-large dogs, the use of force policy, and the training for capturing at-large dogs, a reasonable supervisor would not have known that the training program and procedures at the LaGrange Police Department were likely to result in an allegedly unconstitutional shooting and killing of a dog and, therefore, Chief McNelly is entitled to qualified immunity on Plaintiff's failure to train claim. See <u>Parrish</u>, 594 F.3d at 1002.

01389261.DOCX/2565-739

**D. The City is Entitled to Summary Judgment Because There Was No Underlying Violation of Plaintiff's Constitutional Rights and There Was No Failure to Train[9]**

**1. The City is Entitled to Summary Judgment Because There Was No Underlying Constitutional Violation**

As demonstrated above, there was no underlying violation of Plaintiff's constitutional rights and, therefore, Plaintiff's constitutional claims against the City must also fail. See Hassan v. City of Minneapolis, Minn., 489 F.3d 914, 920 (8th Cir. 2007); Teasley, 548 F.Supp.2d at 705. Even assuming there was an underlying violation of Plaintiff's constitutional rights, the City is still entitled to summary judgment on Plaintiff's failure to train claim.

**2. The City is Entitled to Summary Judgment on Plaintiff's Failure to Train Claim**

The parties agree that in order for Plaintiff to prevail on his §1983 failure to train claim against the City, Plaintiff must produce sufficient evidence to demonstrate: "(1) the city's… training practices are inadequate; (2) the city was deliberately indifferent to the rights of others in adopting them, such that the failure to train reflects a deliberate or conscious choice by a municipality; and (3) an alleged deficiency in the… training procedures actually caused the plaintiff's injury."[10] Andrews, 98 F.3d at 1076 (8th Cir. 1996)(internal quotations and citations omitted); see also Teasley, 548 F.Supp.2d at 706. The undisputed facts in this case demonstrate that the City's training was not inadequate and that the City was not deliberately indifferent to the rights of others.

---

[9] Plaintiff has abandoned his claims that the City failed to properly hire, supervise, control, and/or discipline Officer Howell. [Doc. No. 75- Pl's Response at p. 27] Therefore, Defendants have not addressed those claims in their reply.

[10] Plaintiff sets forth this same legal standard in his response. [Doc. No. 75- Pl's Response at p. 28]

### a. The City's Training Was Not Inadequate

As stated above, the undisputed facts in this case demonstrate that the training was not inadequate. Chief McNelly provided training to Officer Howell regarding capturing at-large dogs when Officer Howell was hired by the City and that neither Officer Howell, nor any other LaGrange police officers, had injured or killed an at-large dog while trying to capture it prior to March 31, 2010. (Facts 37-44, 50-51, and 54-55) Moreover, neither Officer Howell, nor any LaGrange police officers had had problems in capturing at-large dogs prior to March 31, 2010. (Facts 48 and 52). The LaGrange police department had also never received any complaints about capturing at-large dogs in the City prior to March 31, 2010. (Facts 48 and 56).

Furthermore, as also set forth above, there was a general use of force policy that prohibited the use of lethal force unless the police officer reasonably believed that an immediate threat of death or serious physical injury existed. (Facts 28-30; Ex I- Use of Force Policy). Defendants reiterate that that policy is consistent with the legal standard that lawfully permits a police officer to shoot and kill a dog that poses an imminent danger to life or property. See Andrews, 454 F.3d at 918. Defendants also reiterate that Plaintiff does not contend that the "Use of Force" policy was in any way inadequate or unconstitutional.

As before, Plaintiff has failed to produce any admissible evidence demonstrating that the City's training was inadequate. Instead, Plaintiff relies on the same speculation and bare allegations that he alleged in response to Chief McNelly's claim that he is entitled to summary judgment on Plaintiff's failure to train claim. As before, those bare allegations that the training was inadequate, mischaracterization of Officer Howell's deposition testimony, and claims that a police officer seeking assistance from a superior officer are not sufficient to demonstrate that the

training was inadequate.  Furthermore, those bare allegations are not supported by any admissible evidence and should be disregarded by the Court.   See Howard, 363 F.3d at 801.

The undisputed facts demonstrate that the training that was given by the City was more than adequate.  The lack of any prior problems that Officer Howell or any other LaGrange police officer had in capturing at-large dogs prior to March 31, 2010 further demonstrates the adequacy of that training.  Consequently, the City is entitled to summary judgment on Plaintiff's failure to train claim because those undisputed demonstrate that the City's training was not inadequate. See Livers, 700 F.3d at 355

### b.   The City Was Not Deliberately Indifferent

The City was not deliberately indifferent to the constitutional rights of other individuals because there was no pattern of similar, prior constitutional violations. "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick v. Thompson, 131 S.Ct. 1350, 1359-60, 179(internal quotations and citations omitted).  "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Id., at 1360(citations omitted); see also Teasley, 548 F.Supp.2d  at 706.  In this case, the undisputed facts demonstrate that there was no pattern of similar, prior constitutional violations involving capturing at-large dogs to establish that the City was "deliberately indifferent."

The undisputed facts demonstrate that neither Officer Howell, nor any other LaGrange police officers had injured or killed an at-large dog while trying to capture it prior to March 31, 2010.  (Facts 50-51 and 54-55).  Moreover, neither Officer Howell, nor any of the LaGrange police officers had had problems in capturing at-large dogs prior to March 31, 2010.  (Facts 48

and 52). The LaGrange police department had also never received any complaints about capturing at-large dogs in the City prior to March 31, 2010. (Facts 49 and 56).

In response to those undisputed facts, Plaintiff has only offered the aforementioned affidavit of Mark Campbell. As stated above, however, the single allegation in that affidavit that, at some point in time, a LaGrange police officer shot at a dog is too vague to determine if that alleged occurrence even amounted to a constitutional violation, let alone demonstrate that the City was "deliberately indifferent."

Plaintiff, however, argues in his response that notice of a pattern of similar unconstitutional behavior does not have to be demonstrated for a municipality to be held liable on a failure to train claim when the need for training is patently obvious. [Doc. No. 75- Pl's Response at p. 28] Contrary to Plaintiff's argument, this case does not fall within the narrow range of circumstances where notice can be implied because the undisputed facts demonstrate that the City had training procedures regarding capturing at-large dogs and the use of force and the need for training was not patently obvious.

In Board of County Com'rs of Bryan County, Okl. V. Brown, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997), the Supreme Court stated:

> In leaving open in *Canton* the possibility that a plaintiff might succeed in carrying a failure-to-train claim without showing a pattern of constitutional violations, we simply hypothesized that, *in a narrow range of circumstances*, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations. The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that *policymakers' decision not to train the officer reflected "deliberate indifference"* to the obvious consequence of the policymakers' choice-namely, a violation of a specific constitutional or statutory right.

01389261.DOCX/2565-739

Id., at 409-10(emphasis added); citing City of Canton, Ohio v. Harris, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). As stated, the Supreme Court specifically limited its comment in Canton to "a narrow range of circumstances." Furthermore, the Court noted that its hypothesis only applied in situations where there was a "decision not to train the officer…." Id. In other words, it only applies in situations where absolutely no training was provided on the subject matter at issue. See Id.; see also Thelma, 934 F.2d 929, 934(Notice of "deliberate indifference" should only be applied in instances where the municipality has failed to provide any training on a certain subject matter.)

Despite noting that narrow exception, the Supreme Court in Bryan Cty., specifically acknowledged the well-established and general rule that a plaintiff will ordinarily have to demonstrate a pattern of prior constitutional violations in order to satisfy the "deliberate indifference" element of a failure to train claim. Bryan Cty, 520 U.S. at 409. As previously stated, this Court has also found that "a failure to train claim generally requires the municipality to have prior notice of the officers' misbehavior and to act with deliberate indifference." Teasley, 548 F.Supp.2d at 706(internal quotations and citations omitted). As stated above, the Supreme Court recently reiterated this well-established general rule in Connick, 131 S.Ct. 1350, 1359-60. In doing so, the Supreme Court also specifically noted that the possibility that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under §1983 without proof of a pre-existing pattern of violations would be rare. Id., at 1361. This case, however, is not a rare case that falls within the narrow exception to the requirement that a plaintiff must demonstrate a pattern of similar violations in order to show "deliberate indifference."

Chief McNelly provided training to Officer Howell about capturing at-large dogs when

Officer Howell was hired by the City.  (Facts 37-44).  Furthermore, the undisputed facts demonstrate that neither Officer Howell, nor any other LaGrange police officers had injured or killed an at-large dog while trying to capture it prior to March 31, 2010.  (Facts 50-51 and 54-55).  Moreover, neither Officer Howell, nor any LaGrange police officers had had problems in capturing at-large dogs prior to March 31, 2010.  (Facts 48 and 52).  The LaGrange police department had also never received any complaints about capturing at-large dogs in the City prior to March 31, 2010.  (Facts 49 and 56).  Furthermore, the City has a "Use of Force" policy addressing the use of lethal force that is consistent with the legal standard for shooting and killing a dog that poses an imminent danger to the police officer and/or others.  Andrews, at 918.  Accordingly, there is no admissible evidence to indicate that this training was patently inadequate.

Plaintiff, however, again offers speculation and bare allegations to argue that the alleged inadequacy of the training was patently obvious, but fails to present any admissible evidence demonstrating that it is inadequate.  Plaintiff's unsupported allegations, however, are insufficient to defeat Defendants' properly supported motion for summary judgment and should be disregarded by the Court.  See Howard, 363 F.3d at 801.

Furthermore, as stated by numerous courts, the "patently obvious" exception to the general rule that a plaintiff must demonstrate a pattern of similar, prior constitutional violations in order to establish "deliberate indifference" only applies in a narrow range of circumstances.  Such circumstances are so narrow that Plaintiff failed to cite to any Eighth Circuit cases that actually determine such circumstances existed, and Defendants are also not aware of any such cases.  Instead, Plaintiff only cited to two district court cases and a Sixth Circuit case.  Those cases are obviously not controlling and a lengthy analysis of those cases is unwarranted.

01389261.DOCX/2565-739

Briefly, however, the court in <u>Fakorzi v. Dillard's, Inc.</u>, 252 F.Supp.2d 819 (S.D. Ia. 2003) misapplied the narrow "patently obvious" exception and is not instructive on the legal issues before this Court. In <u>Russo v. City of Cincinnati</u>, 953 F.2d 1036 (6th Cir. 1992), the Sixth Circuit never addressed whether there was a pattern of similar constitutional violations or whether the need for training was patently obvious and, therefore, that case is also not applicable here. <u>Hardeman v. Clark</u>, 593 F.Supp. 1285 (D.C.D. 1984) is also not instructive on this case because the district court in <u>Haderman</u> only addressed the sufficiency of the plaintiff's complaint in reviewing the defendants' motion to dismiss and specifically stated that it was not commenting on the merits of those allegations.

As repeatedly stated, the general rule requires a pattern of similar constitutional violations in order to demonstrate deliberate indifference for purposes of a failure to train claim. <u>Connick</u>, 131 S.Ct. at 1360; <u>see also</u> <u>Teasley</u>, at 706. Here, as set forth above, Plaintiff has failed to produce any admissible evidence demonstrating a pattern of similar, prior constitutional violations and, therefore, Plaintiff has failed to demonstrate that the City was "deliberately indifferent" to the constitutional rights of other individuals. Accordingly, the City is entitled to summary judgment on Plaintiff's failure to train claim. <u>See</u> <u>Id.</u>

## IV. CONCLUSION

For the above and foregoing reasons, Defendants respectfully request the Court to grant their motion for summary judgment.

01389261.DOCX/2565-739

Respectfully submitted,

PAULE, CAMAZINE & BLUMENTHAL, P.C.
*A Professional Corporation*

By:/s/ D. Keith Henson
    D. Keith Henson, #31988MO
    165 North Meramec Ave., Suite 110
    St. Louis (Clayton), MO  63105-3772
    Telephone:  (314) 727-2266
    Facsimile:  (314) 727-2101
    khenson@pcblawfirm.com
    Attorney for Defendants Doug Howell, Thomas
    McNelly and City of LaGrange, Missouri

## CERTIFICATE OF SERVICE

The undersigned hereby states a true and correct copy of the foregoing was filed with the Clerk of the Court to be served by the operation of the Court's electronic filing system this 11th day of April, 2013 to:

James W. Schottel, Jr.
Schottel & Associates, P.C.
906 Olive Street, PH
St. Louis, MO  63101
Fax:  (314) 421-4060
jwsj@schotteljustice.com
Attorney for Plaintiff

/s/ D. Keith Henson

01389261.DOCX/2565-739